UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE O'HAGIN,

    Plaintiff,

v.                                              Case No. 8:08-cv-1998-T-26TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
                                    /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was fifty-six (56) years of age at the time of her administrative hearing in October 2007. She stands five feet, seven inches tall and weighed 190 pounds according to her administrative filings. Plaintiff has a two-year Associate's degree in business administration. Her past relevant work was as an accounting clerk and an auditor clerk. Plaintiff applied for disability benefits March 9, 2006, alleging disability as of January 31,

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

2002,[2] by reason of degenerative disc disease, lumbar spine impairment, severe back pain, left and right knee impairment, ovarian cancer, fibromyalgia, osteoporosis, multiple joint arthritis, chronic obstructive pulmonary disease (COPD), bulging disc injury, asthma, and a heart murmur. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified she is unable to work due to pain in her back, neck, and problems with her knees and hands.

Plaintiff described a wide assortment of physical ailments. She testified that she has bulging discs in her lower back that date back to a rear-end collision that occurred twenty years ago which she believes were exacerbated more recently. Plaintiff had a total hysterectomy for ovarian cancer in May 2001.[3] After returning to work, she had problems with falling. She had some residual effect from the surgery including abdominal, back, and neck pain. She testified that while at the hospital for her surgery, she was almost dropped being moved from the gurney to the surgical bed and hit her entire neck and back.[4] Plaintiff has undergone pain management and physical therapy for her back pain. She testified that her

---

[2] At her administrative hearing, Plaintiff requested that her alleged onset date be amended to November 1, 2004.

[3] By her account, she has not had a recurrence of the cancer and does not have to undergo chemotherapy or radiation.

[4] She also complains she got a staph infection while in the hospital that resulted in high fevers, but it was resolved with antibiotics.

2

back pain has worsened, and now it is coming up her entire back and into her neck. Additionally, Plaintiff fell while in the hospital and tore ligaments in both knees which now swell up and make it difficult for her to walk. She takes medication for nerve pain and also muscle relaxers. She also takes anti-seizure medication for tremors in her hands.

Plaintiff has not had surgery for her back. It is not recommended at this time because she is too much of a health risk for surgery due to a heart murmur, asthma, and a "bronchial type thing."[5]

As for her daily activities, she usually takes her medication upon waking and then lies back down "just about all day." She will lie on her left hip because lying down on her back hurts too much. The reason she lies down all day is to avoid "stressing" her knees out. Plaintiff's knee problems prevent her from bending down, squatting, and kneeling. Her Brandon orthopedist told her that she will need full knee replacements if she continues to stress out her knees so she will lie down all day on a futon-type couch.

By Plaintiff's account, her husband will vacuum, do the dishes, make the bed, carry the laundry, and dust because she cannot do these things. He helps with the cooking as well because she can usually do activities such as cooking for about fifteen to twenty minutes before needing to rest for an equal amount of time. Plaintiff has difficulty with personal grooming. She cannot get in and out of the tub on her own because of her knees. She has difficulty dressing herself and tying her shoelaces. Plaintiff gets tired walking to her mailbox and climbing. However, Plaintiff also testified that she can walk twenty minutes at one time

---

[5]Plaintiff is a smoker. Doctors have advised her to stop.

3

and stand for twenty to thirty minutes. She is able to sit for twenty to thirty minutes. Plaintiff can bend a little, but cannot crawl or kneel. Plaintiff wakes constantly at night to use the bathroom. The pain usually wakes her. She estimates that she is lying down six hours during the day. Plaintiff uses a cane and will lean on things to help her get around her house. She has a back brace and hand braces for her carpal tunnel. Plaintiff experiences chronic headaches every day which sometimes turn into migraines. She has medication, nerve pills, that she takes for the headaches that reduce the pain from severe to dull ache, but the pain remains; the medicine just takes the edge off. She takes muscle relaxers, pain pills, seizure pills, and nerve pills to help her sleep at night.

Plaintiff testified as to problems with memory and lack of concentration due to the pain she experiences, as well as side effects from the medications she takes. She has difficulty comprehending things she reads and difficulty writing due to pain and numbness in her hands. The pain in her hands exists all the time, and she is unable to use a calculator and computer because she will mis-key things due to tremors associated with nerve damage. She experiences the tremors almost every day. Lifting things, particularly something heavy, makes it worse and causes her to drop things. She has difficulty gripping and testified that she has carpal tunnel on both sides which causes her a lot of problems using her hands. She estimates she can lift five to ten pounds, but she has trouble doing it. She used to do latch hook and can no longer because of the pain in her hands. She does not do yard work.

Plaintiff testified she experiences pain in her back every day. With medication, her pain is at a level of seven on a scale from one to ten with ten being the most painful. Without

4

medication, her pain level is at a ten. She takes Ultram for her pain three times per day, but it prevents her from being able to focus and concentrate. The medications also make her sleepy and dizzy. She treats her knee pain and swelling with ice packs for twenty minutes three to four times per day. The radiating neck pain she experiences every morning upon waking and usually lasts all day. Her neck pain limits her ability to drive. She will drive herself during the day the five or ten miles to the doctor's office or the grocery store, but she primarily has her husband drive her places.

Although she has both good and bad days, by her account, she has mostly bad days–she estimates twenty-five bad days out of every month. She does not go for walks, drives, visiting people, to church, meetings, movies, restaurants, or engage in any hobbies on a regular basis because of her impairments.

Plaintiff has been diagnosed with fibromyalgia. She has undergone physical therapy for over a year, including stretching exercises, electronic muscle stimulation, adjustments, and massage which provided her temporary relief, but her neurologist told her that she should stop otherwise she may cause further nerve damage in her neck and back. She also underwent pain management for a year, but it was only a temporary fix. (R. 11-41).

The ALJ next called Dr. Irvin Roth, a vocational expert ("VE"), to testify.[6] After classifying Plaintiff's past relevant work, he testified upon a hypothetical assuming a person of Plaintiff's age, education, and work experience; capable of light level work with only occasional climbing, stooping, kneeling, crouching, and crawling; with no climbing vertical

---

[6]Counsel advised the court that Plaintiff's husband, Robert, was available to testify but the ALJ suggested such was unnecessary given Plaintiff's explicit testimony.

5

ladders, scaffolds, ropes, or at unprotected heights; avoidance of concentrated exposure to noxious dust, smoke, fumes, and gases at a noxious level; and avoidance of work in poorly ventilated areas. The VE opined that such individual could perform Plaintiff's past relevant work as an accounting clerk and audit clerk. Upon a second hypothetical of an individual with the physical ability to perform sedentary work, but who needed to lie down for many hours during the day, practically a whole eight-hour shift, the VE testified that such individual would be unable to perform Plaintiff's past relevant work or any job that existed in the national economy given those limitations. Counsel declined to ask the VE any questions. (R. 41-43).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail. Pertinent to the decision, Plaintiff's date last insured for disability benefits was June 30, 2007.

By his decision of November 27, 2007, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease in the lumbar and cervical spine with bulges, mild COPD/emphysema, and degenerative changes in the knee, she nonetheless had the residual functional capacity to perform a limited range of light[7] exertional work, specifically limited to occasional climbing, balancing, stooping, kneeling, crawling,

---

[7]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

crouching, and no climbing long vertical ladders, scaffold, ropes or at unprotected heights, and avoidance of concentrated exposure to noxious dust, smoke, fumes, and gases, as well as avoiding work in poorly ventilated enclosed areas. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 70-79). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in failing to make proper credibility findings as to the Claimant's testimony and erred in engaging in "sit and squirm jurisprudence";

(2) The ALJ failed to consider the combined effect of all impairments;

(3) The ALJ erred in failing to give proper weight to the functional limitations set forth by the Claimant's treating chiropractor; and

(4) The ALJ erred by failing to consider several impairments, including fibromyalgia, carpal tunnel syndrome, essential tremors, and hip pain. (Doc. 11 at 3).

After full review of the medical record and essentially for the reasons set forth in the Commissioner's brief, I conclude Plaintiff is not entitled to relief on this appeal.

Starting with her fourth claim, Plaintiff argues that the ALJ erred in failing to consider several impairments: fibromyalgia, carpal tunnel syndrome, essential tremors, and hip pain, where there was evidence in the medical record of these diagnoses. Specifically, Plaintiff points to several medical records as evidence of these impairments, including the December 15, 2006, record of Dr. Vipul Joshi, M.D., reflecting a "working diagnosis" of fibromyalgia; Dr. Kamlesh Patel, M.D.'s diagnosis of March 13, 2007, of chronic pain syndrome, fibromyalgia, and essential tremors; the NCV study indicating neuropathy of the wrists was demyelinating; and an MRI of September 13, 2007, showing that there is subchondral cystic change noted at the head of the femur in the left hip and small joint effusion in the right hip. By Plaintiff's argument, remand is proper where an ALJ fails to consider evidence in the record. (Doc. 11 at 11-13).

The Commissioner responds that the ALJ properly excluded these impairments from his findings because Plaintiff failed to show lasting, functionally limiting effects of the alleged impairments. The records reveal that Plaintiff was never definitively diagnosed with fibromyalgia, nor did any acceptable medical source opine that the alleged fibromyalgia

caused her to have physical limitations. Similarly, Plaintiff was never conclusively diagnosed with carpal tunnel syndrome, nor did any doctor recommend Plaintiff limit her activity involving her hands and wrists. As for evidence in the record of essential tremors, although Dr. Patel noted Plaintiff had tremors in both hands that subsided with distraction and a reported head bobbing tremor, he noted that the tremors did not bother her in her daily activities. Regarding Plaintiff's complaints of hip pain, the Commissioner states that the first complaint of hip pain did not occur until September 2007, after Plaintiff's insured status expired. Moreover, the Commissioner submits that the ALJ properly considered Plaintiff's impairment in assessing her RFC, and that Plaintiff failed to provide evidence that her fibromyalgia, carpal tunnel syndrome, essential tremors, or hip pain caused further limitations on her ability to work. (Doc. 12 at 6-9).

My review of the medical records indicates the ALJ gave the same a fair reading in his decision. While recognizing references to the same, the ALJ properly concluded that there is no definitive diagnoses for either fibromyalgia or carpal tunnel syndrome.[8] More

---

[8] Plaintiff's pain complaints were variously described in the medical record. *See* (R. 288-89, 391-92, 397-98, 355, 432-45). In a note from December 2006, her rheumatologist, Dr. Vipul Joshi, M.D., noted a "working diagnosis of fibromyalgia" but in the same note stated, "at this time she has more symptoms of chronic pain syndrome rather than fibromyalgia." (R. 443). Dr. Kamlesh Patel, M.D., examined Plaintiff in March 2007, noted a history of fibromyalgia, and stated an impression for chronic pain syndrome and fibromyalgia. (R. 449-50). However, no clinical basis is offered to support the working diagnosis, and more significantly, neither doctor assessed any functional limitations in connection with these findings. By my review, the clinical findings from both Joshi and Patel tend to support the functional conclusions reached by the ALJ rather than discredit the same. *See* (R. 433-35, 438-39, 442-43, 449). Similarly, as for her wrists, the nerve test on Plaintiff's hands by Dr. Patel lead to his conclusion of "bilateral mild median neuropathy at the wrist, demyelinating" not carpal tunnel. (R. 416). More to the point, Plaintiff again identifies no limitations from the medical record for this condition by whatever name.

significantly, Plaintiff fails to point out any limitations or restrictions from these conditions which were not fairly assessed by the ALJ. Similarly, while there is an impression for essential tremors, Plaintiff herself discounted the functional significance of the same indicating to Dr. Patel that her tremors did not bother her in her daily activities and she deferred on taking any medication for the condition. (R. 450). Finally, as for her hip pain, while an MRI of her right hip taken in September 2007, after Plaintiff's date last insured for benefits, revealed a small joint effusion in the right hip but no bony abnormality (R. 456), Plaintiff makes no showing of the significance of the same on this appeal. Nor do the limited medical records. Accordingly, Plaintiff is not entitled to relief on this claim.

As for the claim that the ALJ failed to consider the combined effect of all her impairments, as the decision reflects, in addressing the five-step evaluation process called for by the regulations, the ALJ noted his obligation to consider the combination of Plaintiff's impairments, severe and otherwise.[9] (R. 71-72). Furthermore, in his findings, he recognized a combination of impairments in his respective findings at steps two and three of this evaluation process. (R. 73-74). As the Commissioner notes, in this Circuit, a finding by the ALJ that a claimant does not have an impairment or combination of impairments listed in or equal to a listed impairment sufficiently reveals that the ALJ has considered the combined effects of the claimant's impairments to meet the applicable standard. *See Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Such finding was made in this case. (R. 73).

---

[9]The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).

11

Plaintiff next argues that the ALJ erred in failing to give proper weight to the functional limitations set forth by the Plaintiff's treating chiropractor, Blaise H. DelMonache, D.C.[10] While acknowledging that chiropractors are not considered "acceptable medical sources" under the regulations, the Plaintiff nevertheless argues that an ALJ can consider a chiropractor's opinion, along with all other medical evidence that a plaintiff may present as it is deemed relevant to assessing a plaintiff's disability. Once an impairment has been established by acceptable "medical sources," the evidence from Dr. DelMonache was relevant to the severity of her impairments and resulting limitations, and thus his opinions should have been assigned greater weight, particularly where Plaintiff relied on treatment from Dr. DelMonache for pain management. (Doc. 11 at 9-10).

In response, the Commissioner contends that the ALJ properly afforded little weight to Dr. DelMonache not only because the chiropractor's assessment was a non-acceptable medical opinion under the regulations, but also because it was inconsistent with the record as a whole. The Commissioner submits that Dr. DelMonache's own records of conservative treatment of Plaintiff belies the allegations of debilitating pain. Further, Dr. DelMonache's records were internally inconsistent, and therefore were properly afforded little weight.[11] (Doc. 12 at 10-12).

---

[10] For Dr. DelMonache's RFC assessments, see (R. 381-90).

[11] In one record, Dr. DelMonache indicates Plaintiff should avoid even moderate exposure to wetness and humidity, concentrated exposure to noise and vibration, and all exposure to extreme temperatures, fumes, odors, dusts, and gases, and yet he states in another note that Plaintiff need not avoid any environmental factors except noise. Additionally, Dr. DelMonache never notes a reduced range of motion, and yet his opinion is based on findings of a reduced range of motion. Although he does not begin seeing Plaintiff until April 2006, he opines that her symptoms and limitations began as early as 2000. (R. 372-89).

12

Plaintiff is not entitled to relief on this claim. As the Commissioner urges, the decision reflects that the ALJ considered the evidence from Dr. DelMonache in full accordance with the applicable standards. Thus, while he discounted her RFC assessment because she was not an acceptable medical source under the regulations, the decision reflects his fair consideration of her reports and opinions. (R. 76-77). As for her opinion evidence, although it was not entitled to any deference, the ALJ considered the same and determined it should be discounted because the findings did not comport with the medical evidence, stating, "for example, there is no evidence of HNP, vertebral fracture or nerve root compression that could account for the magnified restrictions and symptoms." (R. 77). This conclusion is supported by the substantial evidence and by my review, the doctor's RFC findings were inconsistent with the clinical notes.

Finally, Plaintiff urges that the ALJ failed to provide adequate and reasonable explanations for discrediting her subjective complaints, but rather relied upon a one-time observation of the Plaintiff at the administrative hearing in concluding that she exaggerated her symptoms. Despite the ALJ's finding of severe impairments of degenerative disc disease in the lumbar and cervical spine with mild bulges, mild COPD/emphysema, and degenerative changes in the knee, as well as noting the MRI that revealed bilateral medial meniscal tears and degenerative joint changes and other records documenting her impairments, the ALJ nevertheless discounted Plaintiff's complaints of pain as being unsupported by medical signs and laboratory findings.[12] (Doc. 11 at 3-7).

---

[12]By Plaintiff's account, the ALJ inappropriately zeroed in on her mannerisms during the hearing as having a normal gait with no difficulty observed. Plaintiff urges this type of

The Commissioner responds that a review of the medical records reflects that the Plaintiff failed to establish the disabling limitations she complained of. The Commissioner notes that the Plaintiff frequently refused treatments that a person who was suffering from disabling symptoms would likely have availed herself.[13] Additionally, the Commissioner argues that the medical evidence shows Plaintiff consistently was found to have good range of motion in her back and extremities with a normal gait. Thus, he urges the medical evidence supported the ALJ's determination that Plaintiff's subjective complaints were not entirely credible. (Doc. 12 at 12-14).

Plaintiff is correct that in this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.*

---

"sit and squirm jurisprudence" is not a proper basis to provide the underpinnings of a denial of Social Security benefits where the medical evidence consistently supports Plaintiff's pain complaints. In support, Plaintiff cites *Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 898 (E.D. Mich. 2001); *King v. Heckler*, 742 F.2d 968, 975, n.2 (6th Cir. 1984).

[13]Specifically, the Commissioner points to numerous examples of Plaintiff's failure to undergo or follow through with recommended treatment including the following: Plaintiff's failure to stop smoking as recommended by her pulmonologist, her refusal to take a treadmill test, her refusal to take a non-exercise stress test, her refusal of knee arthroscopy as recommended by her orthopedist, her refusal of steroid injections, her failure to attend physical therapy, her refusal of antidepressant medication or acupuncture, and her preference of controlling her high cholesterol with diet and exercise rather than medication.

*Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones,* 941 F.2d at 1532. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

As the decision reflects, the ALJ found Plaintiff's subjective complaints exaggerated based on his observations of her at the hearing *and* because the medical record, as reviewed in the decision, did not contain any opinions by a treating or examining physician indicating that Plaintiff was disabled or limited beyond what he determined in his residual functional capacity assessment. By his review of the medical record, physical examinations revealed no motor or sensory deficits and good range of motion although with some tenderness. (R. 77). After reviewing the medical opinions in the record, including those from Plaintiff's chiropractor, the ALJ concluded that,

> the findings contained in the record are not supportive of the claimant's persistent allegations of disabling impairments. The claimant's statements concerning her impairments and its impact on her ability to work are not entirely credible. The limitations to which the claimant testified are far in excess of those which reasonably would be expected from the objective clinical findings and are not consistent with the other medical evidence of record.

(R. 78). By my consideration of the whole of the record, the ALJ's findings and conclusions in this regard are supported and offer adequate reason for discounting the subjective

15

complaints under the "pain standard" regardless of the ALJ's personal observations of Plaintiff at the hearing.

IV.

In conclusion, while the Plaintiff demonstrated a number of severe impairments, her subjective complaints of pain and other symptoms appear exaggerated on this claim. For the reasons set forth above, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
21st day of January 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Richard A. Lazzara, United States District Judge
Counsel of Record